IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOHN R. MARCIL, ) | |
| ) | |
| Plaintiff, ) | CV-06-6117-TC |
| ) | |
| v. ) | FINDINGS AND |
| ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

COFFIN, Magistrate Judge:

## INTRODUCTION

Plaintiff John Marcil brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383)(3). The Commissioner's decision should be affirmed and this action should be dismissed.

## BACKGROUND

Marcil was born October 4, 1944. Tr. 51.[1] He has a high school education and two years of schooling in the U.S. military. Tr. 453. Marcil entered the U.S. military in1963 and worked primarily in engine repair and maintenance. Tr. 459. He injured his ankle when struck by a motor vehicle in 1988 and left the military with a service connected disability. Tr. 157. After leaving the military, Marcil worked as a stock man, a maintenance worker, and as a driver for a car rental company. Tr. 81. Marcil alleges onset of disability from November 30, 2002, due to the severe fracture of his right ankle and status post four ankle surgeries. Tr. 51. He applied for DIB and SSI on November 21, 2002, and his applications were denied. A hearing was held before an Administrative Law Judge (ALJ) on May 19, 2005. Marcil satisfies the insured status requirements for a claim under Title II through December 31, 2008, and must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on November 16, 2005, finding Marcil not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921. The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 U.S. at 146. The ALJ found Marcil has the medically severe impairment of status post ankle fracture. Tr. 15.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. Marcil challenges the ALJ's determination of his RFC. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Marcil challenges the ALJ's determination that he is able to perform his past work and is not disabled.

## THE ALJ's FINDINGS

The ALJ determined Marcil had not engaged in substantial gainful activity (SGA) after the alleged onset of disability. Tr. 15. He found the medical evidence established Marcil had a severe impairment of status post ankle surgery. *Id.* The ALJ determined Marcil's impairment did not meet or equal the criteria for a listed impairment enumerated in 20 C.F.R. Part 404, subpart P, appendix

1 (Listing of Impairments). *Id.* He found Marcil retained the RFC to perform work at a light level with the limitation of occasionally climbing, balancing, stooping, kneeling, crouching or crawling. Tr. 20.

The ALJ elicited testimony from an impartial vocational expert (VE). The ALJ asked the VE whether an individual of Marcil's age, education and experience had skills that could transfer to sedentary work. The VE replied Marcil had no skills to transfer to sedentary work. Tr. 498. The VE testified that Marcil's past work as a driver was light work and his past work in maintenance was light as he performed it. Tr. 496. Marcil testified he worked for Hertz as a driver and spent most of the day sitting. Tr. 499. He further testified he spent four and a half to five and a half hours driving, with the remainder of the day spent on paperwork and other tasks. *Id.* The ALJ determined Marcil could perform his past relevant work as a driver was not disabled within the meaning of the Social Security Act. Tr. 20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001)(citing *Andrews v. Shalala*, 53 F.3d at 1039. If the evidence can reasonably support either affirming or

reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1040.

## DISCUSSION

Marcil alleges the ALJ improperly rejected the opinion of his treating physician and physician's assistant. He further alleges the ALJ erred in evaluating his credibility and determining his RFC. Marcil asserts the ALJ improperly determined his ability to perform his past relevant work and failed to follow the Medical-Vocational Guidelines.

### I. Medical Background

Marcil was injured in a motor vehicle accident in 1988 and suffered a severe fracture of his right ankle. In December, 2002, he underwent surgery for a tarsal tunnel release, which was his fourth ankle surgery. Tr. 189. His surgeon noted Marcil reported decreased ankle pain following the surgery, although he had some pain in his Achilles tendon. Tr. 122, 124. Marcil received medical treatment for ankle pain and decreased range of motion from the Veteran's Affairs Medical Centers (VAMC) in Nevada and Oregon. Tr. 121, 282, 406-412. Jess Cresencia, a physician's assistant conducted a compensation and pension (C&P) examination in June, 2003, to evaluate whether Marcil qualified for an increase in VA assistance. Tr. 279. Mr. Cresencia noted Marcil was not taking medications and not wearing a splint or brace, but was using a cane. He found no evidence of painful motion, edema, effusion, instability, weakness, tenderness, redness, heat, or abnormal movement or guarding of the ankle. Mr. Cresencia assessed right ankle osteoarthritis with decreased range of motion (ROM). The report was co-signed by Dr. Smith. Tr. 281-282. Dr.

Barker, a state agency consultant, examined Marcil on August 11, 2003. Tr. 157-161. Dr. Barker determined Marcil could lift thirty pounds occasionally and twenty pounds frequently; could stand from four to six hours; could sit for six hours; should never climb a rope or scaffold, and could occasionally climb ramps, stairs, and ladders. He noted alternating standing and sitting might be required for Marcil's subjective complaints of pain which could not be objectively verified. Dr. Barker also noted Marcil could walk a block over rough, uneven surfaces, stating it was unknown if a cane might be necessary. He noted Marcil could and did drive. Tr. 159.

Dr. Hopkins, a non-examining state agency consultant, developed an RFC for Marcil on April 24, 2003. The RFC was at the light level of exertion with limitations. The limitations were never climbing ladders, ropes, or scaffolds and occasionally climbing ramps or stairs. Tr. 149 - 156. Dr. Hughes, an agency consultant, developed an RFC with the same limitations on August 20, 2003. Tr. 161-168. Marcil was evaluated at the VAMC in Roseburg, Oregon to determine if he qualified for an increase in his service-connected disability. William Lussier, a physician's assistant, conducted a C&P examination in January, 2004. He noted evidence of prior ankle trauma with some degenerative changes but an apparent fusion of the distal fibula with the talus, and possibly the calcaneus. An addendum in the medical notes states Marcil would be "unable to obtain or maintain employment in any position requiring standing, walking, lifting, or climbing. He is physically capable of employment involving sitting." Tr. 409-412.

Dr. Clinger, a physician at the VAMC in Roseburg, began treating Marcil in February, 2004. Tr. 291-292. Dr. Clinger found degenerative and post operative changes in Marcil's ankle. He noted Marcil could walk across the room without a cane and could walk one block with bilateral canes. *Id.* Dr. Clinger recommended physical therapy and continued follow-up. The physical therapist,

6 - FINDINGS AND RECOMMENDATION

Case 6:06-cv-06117-TC    Document 13    Filed 04/16/07    Page 7 of 14

Tim Juett, noted when Marcil took a few steps without his cane he sometimes limped, sometimes minimally limped, and sometimes never limped. Tr. 381-382. Mr. Juett also noted inconsistency in repeated ROM measurements on Marcil's ankle. *Id.*

Dr. Malak, a podiatrist, examined Marcil in July, 2004, and noted Marcil appeared frustrated and resisted his recommendations regarding treatment. Tr. 345-348. He opined Marcil's x-rays did not indicate a fusion, but rather, a bony bridge, and recommended a CT scan. Dr. Malak assessed ankle pain secondary to tarsal tunnel syndrome and status post multiple traumas and surgeries. He noted he was unable to thoroughly examine Marcil's ankle due to complaints of pain. Dr. Malak recommended capsaicin cream, strengthening and stretching exercises, and possible cortisone and ultra sound treatments to facilitate the exercises. *Id.*

Dr. Mitchell, a VAMC consultant, examined Marcil in September, 2004, to determine if he was disabled due to hypertension and a hernia. Tr. 360-364. He noted Marcil entered the room with bilateral canes and "exaggerated antalgic gait", but when he left the room he walked several steps without canes and with a relatively normal gait. Tr. 362 Dr. Mitchell assessed right ankle arthritis with subjective pain. Tr. 363. William Lussier examined Marcil on September 2, 2004, for disability of the spine and knee. Tr. 365-370. He noted that while Marcil was not on any pain medications, he could experience "flare-up" in his back and knee due to prolonged walking or standing related to modified gait and weight bearing due to his ankle condition. However, Mr. Lussier noted Marcil's knee pain response was likely exaggerated and there was insufficient objective evidence to arrive at an opinion of unemployability. Tr. 369.

Dr. Clinger referred Marcil for more physical therapy in September, 2004. Marcil was discharged from physical therapy in November, 2004. Mr. Juett, the physical therapist, noted Marcil

7 - FINDINGS AND RECOMMENDATION

could walk up to two blocks with his brace and cane, had increased ankle strength and endurance, and was given a home program. Tr. 313. In February, 2005, Dr. Clinger noted Marcil could walk fifty feet, could walk a hundred to two hundred feet with a brace and cane, and could not carry objects while using his canes. He further noted Marcil could stand two hours, sit two to three hours, and lift one gallon of milk overhead. Dr. Clinger also noted Marcil did not want surgery, had cut back on his pipe smoking, and planned to watch his diet and lose weight. Tr. 352.

## II.     RFC Determination

### A. Dr. Clinger

Marcil asserts the ALJ erred by not giving greater weight to the opinion of Dr. Clinger regarding his ability to stand for two hours and sit for two to three hours. A treating physician's opinion is generally afforded the greatest weight in disability cases because the treating physician is "employed to cure and has the best opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(citations omitted). Dr. Clinger's opinion was inconsistent with that of Dr. Barker, an examining physician, and Drs. Hughes and Hopkins, evaluating physicians. An ALJ can reject a treating physician's opinion that is controverted if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted).

The ALJ stated it was unclear if Dr. Clinger's notes were based on clinical findings or subjective statements by Marcil. Dr. Clinger's notes describe activities Marcil intended to do, such as watch his diet, cut back on his pipes, and lose weight. The notes also mentioned Marcil's home blood pressure, his desire not to have surgery, and Marcil's ability to lift a gallon jug. The notes and their context support the ALJ's inference that these were subjective statements by Marcil and not clinical findings. As noted below, the ALJ did not find Marcil fully credible regarding his

8 - FINDINGS AND RECOMMENDATION

complaints of pain and limitations. A specific and legitimate reason to reject a treating physician's opinion is that the opinion is premised on subjective complaints that are properly discounted by the ALJ. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ may also "discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1195, citing *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) and *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ found Dr. Barker's opinion based on specific testing and more consistent with the medical record than Dr. Clinger's opinion. He noted the medical record contained notes by several medical providers indicating Marcil either exhibited an exaggerated pain response or that there was a lack of objective medical evidence for his symptoms. Tr. 157-161, 281-282, 362, 369, 381-382. The ALJ gave specific reasons based on substantial evidence in the record for giving more weight to the opinion of Dr. Barker in developing Marcil's RFC.

**B. Record Development**

Marcil contends the ALJ failed to fully develop the record regarding whether Dr. Clinger's medical notes from February, 2005, were based on medical evidence or the subjective reports of Marcil. The ALJ stated, "It is uncertain if that assessment was based on the claimant's subjective reports or on clinical findings. In any event, Dr. Barker's report is more consistent with the record, and was based on specific and thorough testing." Tr. 18. An ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari,* 276 F.3d 453, 459-460 (9th Cir. 2001); *Tonapetyan v. Halter,* 242 F.3d at 1150. The ALJ properly noted there was sufficient medical evidence to reach a determination. The ALJ's duty is to resolve conflicting evidence, which he did.

9 - FINDINGS AND RECOMMENDATION

*Matney v. Sullivan,* 981 F.2d at 1019. In resolving conflicts, the ALJ may draw reasonable inferences from the evidence. *Gallant v. Heckler*, 753 F. 2d 1450, 1453 (9th Cir.1984). The burden of proving disability rests on Marcil. The ALJ is not required to seek sufficient evidence to support a finding of disability.

### C. Credibility Determination

Marcil asserts the ALJ failed to properly evaluate his testimony regarding his limitations and pain. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Marcil has a medically determinable impairment which could produce his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Smolen v. Chater*, 80 F. 3d at 1284; *See also* SSR 96-7p.

The ALJ noted the medical record indicated exaggerated pain behavior and decreased pain behavior if Marcil was distracted during his examinations. Dr. Barker noted Marcil stated he was unable to raise the toes on his right foot or stand on them, yet was able to do so when distracted. Tr. 158. He also noted Marcil "cried out in pain" during a light touch examination of the right ankle yet later rubbed the same area with no pain reaction. *Id.* Although Marcil would not allow a detailed examination of his ankle, Dr. Barker noted Marcil had good dorsi flexion and plantar flexion of the ankle when distracted. *Id.* Dr. Mitchell noted Marcil entered the examination room with two canes

10 - FINDINGS AND RECOMMENDATION

and "an exaggerated antalgic gait" but after the exam was able to walk several steps without the canes and with a relatively normal gait. Tr. 362. William Lussier examined Marcil for a disabling knee condition and noted Marcil was "likely exaggerating his subjective pain response." Tr. 369. Tim Juett, a physical therapist, noted inconsistencies in the ROM tests and in subjective pain complaints during palpation of specific points along the Achilles tendon. "He would groan with pain at a specific point one time, and not at another time. With distraction or conversation during ROM, I could get much more ROM in R ankle dorsi flexion without pain reaction." Tr. 381-382. Mr. Juett also noted when Marcil walked without a cane his gait was sometimes with a limp, and sometimes without a limp. Tr. 381.

The ALJ also noted the medical record contains notes stating there were no objective findings to support the severity of Marcil's pain symptoms. Jess Cresencia, a physician's assistant, reported "no objective evidence of painful motion, edema, effusion, instability, weakness, tenderness, redness, heat, or abnormal movement or guarding of movement." Tr. 282. Dr. Barker also found no swelling, heat or deformity other than around the surgical incision area on his ankle. Tr. 158. Although the record indicates degenerative and postoperative changes to his ankle, Marcil sometimes refused inspection of his ankle due to "severe" pain. Tr. 158, 347. However, as the ALJ noted, Marcil was not taking any medications for pain. Tr. 18, 456-457. The ALJ also noted inconsistencies in Marcil's testimony regarding his walking. Tr. 464.

In addition to objective medical evidence and the claimant's treatment history, the ALJ may also consider compliance with treatment and the effectiveness of medications. *Smolen v. Chater*, 80 F.3d at 1284. The ALJ noted Marcil's reluctance to consider all treatment options and his lack of pain medications. Dr. Malak, a podiatrist, examined Marcil in July, 2004, and stated, "The patient is not willing to accept any recommendations that I had made today and resists any recommendations

11 - FINDINGS AND RECOMMENDATION

that I gave him in terms of treatment throughout the visit." Tr. 374. Marcil testified he took no pain medications or anti inflammatory medications, although he would occasionally take Bayer aspirin. Tr. 456-457.

In assessing credibility, the ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen v. Chater,* 80 F.3d at 1285. The ALJ noted Marcil lived by himself and was able to perform self-care and activities of daily living, had a pilot's license, drove a car, and took public transportation. The ALJ also noted Marcil's sister, Janice Curtis, testified that Marcil could shop and walk around the store leaning on the basket. She also testified that while practicing archery, he was able to retrieve arrows that were twenty to thirty yards away and someone else retrieved them if further away. Tr. 489. The ability to perform daily household chores may indicate an ability to work. *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995); *See, Curry v. Sullivan,* 925 F.2d 1127, 1130 (9th Cir. 1990). On the other hand, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d at 603. Nevertheless, if the claimant's level and type of activity is inconsistent with his claimed limitations, his activities do have a bearing on his credibility. *Id.* The ALJ gave clear and convincing reasons for rejecting Marcil's assertions regarding his inability to do any work. The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.

### D. Physician's Assistant

Marcil asserts the ALJ did not properly consider the opinion of William Lussier, a physician's assistant at the VAMC. An addendum to Mr. Lussier's January, 2004, medical notes state Marcil was unable to work at a job requiring standing, walking, lifting or climbing, but was capable of employment involving sitting. Tr. 410-412. A physician's assistant is not a medical source who can

12 - FINDINGS AND RECOMMENDATION

provide evidence to establish an impairment. However, as an "other" medical source, a physician's assistant may provide evidence regarding the severity of an impairment. 20 C.F.R. §§ 404.1513, 416.913. In his analysis of the medical record from the VAMCs, the ALJ discussed Mr. Lussier's report, noting Mr. Lussier stated Marcil could work at employment requiring sitting. Tr. 17. Mr. Lussier's opinion regarding Marcil's inability to work at a job requiring standing or walking was inconsistent with the opinions of medical sources Drs. Barker, Hughes and Hopkins. A physician's assistant opinion, as an "other" source is not afforded the same weight as the opinion of an acceptable medical source. *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996). The ALJ properly weighed the opinions of medical sources and other sources.

### III. Past Relevant Work

Marcil contends the ALJ erred in determining he could perform his past relevant work as a driver. He asserts the ALJ should have determined he is not capable of work or work other than at a sedentary level. The ALJ properly analyzed all of the medical evidence and concluded Marcil could work at a light level with some limitations. Marcil asserts the ALJ gave great weight to Dr. Barker's opinion, yet did not adopt all of it. Dr. Barker found Marcil could lift thirty pounds occasionally and the ALJ limited Marcil to lifting twenty pounds occasionally. Dr. Barker noted a sit/stand option may be necessary for Marcil's subjective complaints, noting these complaints could not be objectively verified. Dr. Barker also noted Marcil "could walk a block over rough, uneven surfaces. . . .it is unknown if he needs a cane to do this. He can drive." Tr. 159. Marcil asserts this statement indicates Marcil was limited to walking a block over rough surfaces and this should have been included in his RFC. However, Dr. Barker did not include this as a limitation in the functional assessment part of his report. Tr. 159. Drs. Hughes and Hopkins, the state agency consultants, did not adopt these comments as limitations. The ALJ's duty is to resolve ambiguities and conflicts in

13 - FINDINGS AND RECOMMENDATION

the record and determine an RFC based on the entire record, which he did. *Magallanes v. Bowen*, 881 F. 2d at 750; SSR 96-5p.

Marcil further asserts the ALJ erred in not applying the Medical-Vocational Guidelines (guidelines). He argues a person of Marcil's age who cannot perform past relevant work and is limited to sedentary work is disabled under the guidelines. 20 C.F.R. Subpt. P, App.2, Rule 201.04. However, the ALJ properly found Marcil could perform his past relevant work as a driver. The guidelines are only applied when an individual cannot perform past relevant work.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Marcil is not disabled under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed and this action should be dismissed.

DATED this 16 day of April, 2007.

Thomas M. Coffin
United States Magistrate Judge